# IN THE COURT OF APPEALS OF IOWA

No. 19-1035
Filed January 21, 2021

**LARRY ALAN BABCOCK,**
 Applicant-Appellant,

**VS.**

**STATE OF IOWA,**
 Respondent-Appellee.
_____

 Appeal from the Iowa District Court for Johnson County, Jason D. Besler,

Judge.

 Larry Babcock appeals the denial of his application for postconviction relief.

**AFFIRMED.**

 Shawn C. McCullough of Powell & McCullough, PLC, Coralville, for

appellant.

 Thomas J. Miller, Attorney General, and Genevieve Reinkoester, Assistant

Attorney General, for appellee State.

 Considered by Bower, C.J., and May and Ahlers, JJ.

**MAY, Judge.**

Larry Babcock appeals the denial of his application for postconviction relief (PCR). We affirm.

**I. Background**

Someone killed Tim Becker. The State believed it was Babcock and charged him with murder in the first degree, a class "A" felony. *See* Iowa Code §§ 707.1, 707.2 (2001). A jury convicted Babcock of murder in the second degree, a class "B" felony. *See id.* §§ 707.1, 707.3. The court sentenced him to prison. Babcock appealed. This court affirmed.[1] *State v. Babcock*, No. 07-0842, 2008 WL 2514636, at *2 (Iowa Ct. App. June 25, 2008). Our opinion included this summary of facts supporting the verdict:

> Tim Becker died of multiple blows to his head in his trailer home on June 30, 2001. The defendant, Babcock, was one of Becker's neighbors. Babcock and his son, Bryan Babcock, were the ones who found Becker dead in his home and called the police. Babcock and his wife moved to Arizona less than two months after the murder. They returned a few months later. Then in the summer of 2003 Babcock unexpectedly appeared at the home of his brother, Tom Babcock (Tom), and asked to go for a ride with him so they could talk. Babcock did not want to talk in the house in front of others. Babcock parked the car at the end of a dead-end road, patted Tom to make sure he was not wearing a "wire," and then told Tom he had killed Becker. Specifically, he told Tom he "beat [Becker], and I beat him bad", and that afterward he "covered his tracks really well" and "cleaned it with a fine tooth comb." Babcock also asked Tom if he should go to his interview with law enforcement in Cedar Rapids or "just take off."
> The brothers had subsequent conversations in which Babcock told Tom he was going to Missouri and told him not to talk to the police about what he had done. However, in approximately October 2003, Tom was interviewed by law enforcement personnel. He told them that Babcock had admitted to him he had killed Becker. Tom agreed to tape record any telephone conversations he had with

---

[1] We preserved his claim of ineffective-assistance of counsel for a possible PCR proceeding.

Babcock. Babcock apparently only called Tom a couple times after that, and Tom recorded those conversations. During the phone calls Babcock discussed being interviewed by law enforcement and not wanting his son to be implicated in the murder.

*Id.* at *1.

After his unsuccessful direct appeal, Babcock filed this PCR action. Babcock's PCR application listed fourteen complaints of ineffective assistance of counsel. The district court denied Babcock's PCR application in its entirety. In this appeal, Babcock narrows his focus to one or two core complaints, namely, that trial counsel was ineffective for failing to retain a forensic pathologist and a forensic entomologist.

**II. Standard of Review**

"We review claims of ineffective assistance of counsel de novo." *King v. State*, 797 N.W.2d 565, 570 (Iowa 2011). "In conducting our de novo review, 'we give weight to the lower court's findings concerning witness credibility.'" *Id.* at 571 (citation omitted).

"To establish [a] claim of ineffective assistance of counsel," the applicant must show their "trial counsel failed to perform an essential duty and counsel's failure resulted in constitutional prejudice." *State v. Walker*, 935 N.W.2d 874, 881 (Iowa 2019). "The claimant must prove both elements by a preponderance of the evidence." *State v. Madsen*, 813 N.W.2d 714, 724 (Iowa 2012).

To establish breach of an essential duty, the claimant must prove counsel "perform[ed] below the standard demanded of a reasonably competent attorney." *State v. Haas*, 930 N.W.2d 699, 703 (Iowa 2019) (citation omitted). "In analyzing the [applicants]'s claims, we 'must indulge a strong presumption that counsel's

conduct falls within the wide range of reasonable professional assistance . . . .'" *Id.* (citation omitted). So the applicant "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* (citation omitted).

"To establish constitutional prejudice, the defendant is required to show 'that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" *Walker*, 935 N.W.2d at 881 (citation omitted). "It is not enough for the defendant to show that the errors had [only] some . . . effect on the outcome of the proceeding." *Id.* (alteration and omission in original) (citation omitted). "Rather, '[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Id.* (alteration in original) (citation omitted).

When the applicant fails to show constitutional prejudice, it is not necessary for the court to decide whether counsel breached a duty. *See id.*; *King*, 797 N.W.2d at 574 ("In this case, however, it is not necessary to decide the issue of whether King's counsel provided inadequate assistance because, upon our review of the entire record, we conclude that King has failed to show prejudice as required under the *Strickland*[2] test.").

**III. Analysis**

Babcock argues "trial counsel was ineffective for failing to engage the services of an expert witness in forensic pathology," who could have convinced the jury that Becker's cause of death was "asphyxia exacerbated by the decedent's

---

[2] *Strickland v. Washington*, 466 U.S. 668 (1984).

underlying preexisting conditions." Babcock also contends trial counsel was ineffective for failing to engage the services of a "forensic entomologist [who] could have potentially been utilized to further narrow down [Becker's] time of death." In Babcock's view, "[a]n expert witness in both forensic pathology and forensic entomology could have swayed the jury as to both the cause and the time of death, thereby calling into question whether [Babcock's] alleged action[s were] the proximate cause of death and also the potential of an alibi for [Babcock]." We address each type of expert in turn.

### A. Forensic Pathologist

We begin by asking whether trial counsel had a duty to present the testimony of a forensic pathologist and, if so, whether counsel's failure led to *Strickland* prejudice. We answer both questions in the negative.

To be clear, there is no reason to believe that *any* forensic pathologist would have testified Becker's death was not a homicide. At the murder trial, the prosecution relied on the state medical examiner, Dr. Julia Goodin, a forensic pathologist. Consistent with the State's theory of the case, Dr. Goodin testified the manner of Becker's death was homicide. The defense called no expert to challenge Dr. Goodin. At the PCR trial, though, Babcock called a private forensic pathologist, Dr. Judy Melinek. Yet Dr. Melinek *did not* disagree with Dr. Goodin as to the manner of Becker's death. *Like Dr. Goodin*, Dr. Melinek testified the manner of Becker's death was homicide.[3] And so, if Dr. Melinek would have been called at Babcock's murder trial, Dr. Melinek could have only *confirmed* Dr. Goodin's

---

[3] Although Dr. Goodin did not testify at the PCR trial, her report and the transcript of her prior testimony were part of the PCR record.

damaging opinion that Becker's death was a *homicide*. Trial counsel had no duty to present that sort of evidence.

It is true Dr. Melinek also emphasized that certain preexisting conditions may have contributed to Becker's death. But it is not as if Dr. Goodin concealed Becker's other conditions. On the contrary, Dr. Goodin explained to the jury that Becker had suffered from a number of physical problems, including chronic renal failure and hypertensive cardiovascular disease. Even so, Dr. Goodin maintained Becker's death was a homicide. And, as noted, Dr. Melinek *agreed*.

But it is also true that, although Dr. Melinek and Dr. Goodin agreed as to the *manner* of Becker's death (homicide), Dr. Melinek suggested a different *cause* of death. Dr. Goodin identified "multiple blunt force injuries to his head" as the cause of Becker's death. Dr. Melinek took a somewhat more nuanced approach, suggesting there were "two mechanisms at play." She testified:

> So I think the cause of death is asphyxia due to smothering, meaning that his nose and mouth were covered and he couldn't breathe, with multiple blunt traumatic injuries of the head. So there's two mechanisms at play here. One is the lack of oxygen to the brain because he couldn't breathe because he was face down in a pillow on bedding and the other mechanism working simultaneously is the blunt force trauma to the head.[4]

---

[4] As already mentioned, Dr. Melinek also testified that Becker's significant medical conditions contributed to his death.

We note also that, at the PCR trial, the State called Dr. Marcus Nashelsky, the Johnson County medical examiner. Dr. Nashelsky testified there were no physical findings in Dr. Goodin's autopsy report that would support asphyxiation. Rather, Dr. Nashelsky agreed that Dr. Goodin appropriately testified Becker's cause of death was from blunt force injuries to the head. Dr. Nashelsky also stated that Dr. Goodin properly noted Becker's underlying medical conditions in the autopsy report.

But Babcock has not shown this testimony would have helped him in his murder trial. He does not explain why changing Becker's cause of death to include *both* blunt force trauma *and* asphyxiation would have aided his defense.[5] Indeed, we agree with the PCR court that:

> [T]he testimony of Dr. Melinek may have been more helpful to the State. If the jury were to believe Mr. Becker died as a result of losing consciousness and suffocating in [a] pillow[,] it is possible the jury may have deemed the killing to be more malicious and, perhaps more intentional, premeditated, and deliberate. The testimony offered by Dr. Melinek may have aided the jury in coming to a [m]urder in the [first d]egree conviction instead of the [m]urder in the [second d]egree the jury rendered.[6]

Again, we believe trial counsel had no duty to present that sort of evidence.

---

[5] To the extent Babcock claims he may have been found guilty of a lesser crime with the testimony or consultation of a forensic pathologist, his argument is not sufficiently developed for our review. *See* Iowa R. App. P. 6.903(2)(g) ("Failure to cite authority in support of an issue may be deemed waiver of that issue."); *State v. Gibbs*, 941 N.W.2d 888, 902 (Iowa 2020) (McDonald, J., specially concurring) ("The failure to make more than a perfunctory argument constitutes waiver."). Even so, this argument would not have likely absolved him of liability for Becker's murder. *See State v. Hubka*, 480 N.W.2d 867, 869 (Iowa 1992) ("[A] defendant cannot escape criminal responsibility for homicide merely because factors other than his acts contributed to the death, provided such other factors are not the sole proximate cause of death.").

[6] As the PCR court explained, Dr. Melinek's testimony allowed for only two possible scenarios:

> Either Mr. Becker was physically forced into the pillow or he was knocked out due to the physical beating preceding the suffocation causing him to fall into the pillow face down and remaining there until he died from suffocation. Regardless of what the jury would have determined, regarding the immediate cause of death or mechanism of death, it should not have changed the individual jurors' decision regarding malice resulting in no prejudice to Larry Babcock. This point is particularly relevant given the jury found Larry Babcock guilty of murder in the second degree rather than murder in the first degree. Larry Babcock has not proven, by a preponderance of the evidence, the jury's verdict would have potentially been impacted if the defense counsel would have offered this suggested evidence.

Indeed, contesting the manner or cause of Becker's death would not have been consistent with counsel's trial strategy. Rather, counsel's trial strategy was simply "to claim that Mr. Babcock didn't do it" based on the lack of physical evidence linking Babcock to the crime scene and, moreover, the existence of a plausible alternative suspect. And as the PCR court noted, trial counsel reasonably believed that "it works better to focus on one defense rather than [pursuing] a shotgun approach." In counsel's words: "You can't have it both ways. I'm not going to argue [Babcock] didn't do it, but oh, if you think he did, Mr. Becker didn't die from the beating. He died from some kind of medical condition. I think those are just contrary strategies."

"Where counsel's decisions are made pursuant to a reasonable trial strategy, we will not find ineffective assistance of counsel." *State v. Bielfelt*, No. 19-0201, 2020 WL 3264373, at *3 (Iowa Ct. App. June 17, 2020) (quoting *State v. Johnson*, 604 N.W.2d 669, 673 (Iowa Ct. App. 1999)); *see also id.* ("Even '[i]mprovident trial strategy, miscalculated tactics, and mistakes in judgment do not necessarily constitute ineffective assistance of counsel.'" (citation omitted)). Indeed, because of the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," we will not conclude counsel was ineffective unless the applicant "overcome[s] the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Haas*, 930 N.W.2d at 703 (citation omitted). Babcock has not done so. And Babcock has not proven that "trial counsel failed to perform an essential duty"—or that Babcock suffered "constitutional prejudice"—because trial counsel did not

"engage the services of an expert witness in forensic pathology." *Walker*, 935 N.W.2d at 881.

### B. Forensic Entomologist

We turn next to Babcock's arguments regarding possible testimony by a forensic entomologist. At the PCR trial, Dr. Melinek testified that, in her review of the crime scene photos, she saw fly eggs on Becker's body. She noted that "*if* there were larvae" they could have been "used to narrow down the time [of death] interval, but you need to have another consultant, which would be a forensic entomologist." (Emphasis added.) Dr. Melinek added "it would have been helpful in this case to narrow down the time interval because that could have potentially given an interval for the police to see whether the defendant, for instance, had an alibi for that time period or not." Building on Dr. Melinek's testimony, Babcock argues trial counsel should have engaged a forensic entomologist to "narrow down [the] time of death" and create "the potential of an alibi" for Babcock.

From our review of the record, though, we cannot conclude trial counsel "failed to perform an essential duty"—much less, caused "constitutional prejudice"—by declining to retain or present testimony of a forensic entomologist. *See id.* To begin with, because Dr. Melinek *is not* a forensic entomologist, she *could not* testify with confidence as to what opinions a forensic entomologist could have formed. And no forensic entomologist testified at the PCR trial. So we cannot know what testimony a forensic entomologist might have provided at the murder trial. And so we cannot say a forensic entomologist's testimony would have been helpful to Babcock's defense.

Moreover, based on Dr. Melinek's testimony, it is questionable whether a forensic entomologist could have formed *any* opinions unless fly eggs or larvae were preserved from the crime scene.[7]  And it appears no larvae or eggs were collected by investigators.[8]

Furthermore, even assuming the time of death might have been narrowed down, Babcock does not explain what alibi he might have relied on.

In short, the record does not show a forensic entomologist could have helped Babcock's defense.  So we conclude Babcock has not proven that "trial counsel failed to perform an essential duty" or that Babcock suffered "constitutional prejudice" because trial counsel did not retain a forensic entomologist.  *See id.*

---

[7] Dr. Melinek testified that "you have to actually preserve the evidence and that was not done in this case.  That said, I looked at the photos [and] I couldn't identify larvae in those photos. . . .  To me, it just looked like eggs."  When asked if a forensic entomologist could have made an appropriate conclusion based on the evidence that was collected, Dr. Melinek answered:

> I don't know the answer to that.  You would have to ask the forensic entomologist. . . .  But [the forensic entomologist] may or may not be able to come to a narrower [time of death] . . . .  I *think* a forensic entomologist, even given the sparsity of the material that's contained here, *should* be able to narrow it down further *if* they were given some more information like the temperature during that time period and their skills and knowledge would *possibly* be able to narrow down the time a lot more than Dr. Goodin could.

(Emphasis added.)  But, even with the correct information, Dr. Melinek could not be sure that a forensic entomologist could narrow Becker's time of death because she is not a forensic entomologist.

[8] Babcock does not argue there was any error in the failure to collect larvae or eggs from the crime scene or that his trial counsel was ineffective for failing to pursue a line of inquiry into the failure.  Additionally, Dr. Nashelsky testified that it is "most definitely not" automatic for someone assisting in a crime scene investigation to "collect entomological material," such as larvae or eggs.  And he is "not aware of a standard protocol" to collect entomological evidence at a crime scene.

**IV. Conclusion**

The district court was right to deny Babcock's PCR application.

**AFFIRMED.**